UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

-------------------------------
IMRE KIFOR,                      )     Civil Action No:
        Plaintiff                )
v.                               )
                                 )     COMPLAINT AND JURY CLAIM
THE COMMONWEALTH OF              )     FOR CIVIL RIGHTS VIOLATIONS
MASSACHUSETTS and                )     AND INJUNCTIVE AND
MIDDLESEX PROBATE AND            )     DECLARATORY RELIEF
FAMILY COURT                     )
        Defendants               )
-------------------------------

INTRODUCTION

The Plaintiff, Imre Kifor, ("Father"), respectfully alleges:

1. This is an action for injunctive relief and damages pursuant to Title 42 U.S.C. § 1983 based upon the continuing violations of Father's rights by the Defendants under the 1st, 5th and 14th Amendments to the United States Constitution, as well as abuse of process, malicious prosecution, false imprisonment, negligent and intentional infliction of emotional distress, and isolation.

JURISDICTION AND VENUE

2. Jurisdiction exists pursuant to Title 28 U.S.C. §§ 1331 and 1343, based on 42 U.S.C. § 1983 and also on questions of federal constitutional law. Jurisdiction also exists under 28 U.S.C. §§

- 1 -

2201 and 2202. Supplemental jurisdiction over claims of Father's state of Massachusetts' law is pursuant to 28 U.S.C. § 1367.

3. Each and all of the acts (or threats of acts) alleged herein were committed by the Defendants, or their officers, agents, and employees, under color and pretense of the statutes, rules, regulations and customs of the Commonwealth of Massachusetts.

4. Venue is proper in this district under 28 U.S.C. § 1391 because the actions giving rise to Father's allegations occurred in the District of Massachusetts, and the Defendants reside or do business in the District of Massachusetts, Boston Division.

## PARTIES

5. As a 59 years old individual, a skilled software engineer with graduate degrees, and a 35 year ago naturalized proud US Citizen, Father is residing at 718 Main St., Acton, MA 01720. He is a private figure, with his life outside of the public eye.

6. The Defendants, the Commonwealth of Massachusetts, ("Commonwealth"), and the Middlesex Probate And Family Court, ("Family Court"), are public employers created pursuant to the laws of the Commonwealth of Massachusetts, M.G.L.c. 258 § 1.

7. The Commonwealth is a state government, and the Family Court is a governmental adjudicatory body or agency, within the meaning of Title 42 U.S.C. § 2000e(a).

8. The Commonwealth and the Family Court are "persons" within the meaning of Title 42 U.S.C. § 2000e(a) and "employers" within the meaning of 42 U.S.C. § 2000e(b).

## CONTEXTUAL DETAILS

9. Two simultaneous complaints for civil rights violations are being filed in the MA Middlesex Superior and US District Courts.

10. They share all the parallel and dual facts and they are thus both supported by virtually identical affidavits and exhibits.

11. Nevertheless, they differ in subject matters and underlying cases. The MA Superior Court complaint is about Father's (as a Plaintiff in the underlying modification cases) connection with his children. The US District Court complaint is about Father's (as a Defendant in the contempt cases) support of his children.

12. While Family Court has denied accepting Father's any and all exhibits, Father was allowed to e-file all his 20 volumes of ~15,000 pages of his relevant evidence with the Appeals Court.

13. Father has thus created an all encompassing database of relevant documents, all e-accessible, verifiable, time-stamped, and e-served automatically to all parties and Family Court.

14. While Father has no funds to print and mail hardcopies of the 20 volumes of his evidence, he hereby offers to email them.

15. Family Court's effective ban on all of Father's efforts to appeal the court's judgments was revealed just recently. Father immediately attempted to rectify the "errors" by filing motions.

16. After receiving proofs of deliberate fraud, Father promptly filed his pleadings for relief, including for the now documented systemic fraud-on-the-court schemes, in the currently open cases (2 in Family Court, #07D-3172-DV1 and #11W-0787-WD/11W-1147-WD, and a defamation case in the Superior Court #2081-CV-00109).

17. Father is also vigorously pursuing his options to appeal the above denials according to the MA Rules of Appellate Procedure.

18. While Father has been complaining from the start through the now 350+ sent open letters to officials, he has also repeatedly filed complaints with the AGO, CJC, BBO and other professional agencies. His complaints have been rejected or denied, including his prior complaint for civil rights violations with the AGO.

- 4 -

19. By filing renewed complaints of discrimination, habeas and civil rights violations, all prior to filing herein private lawsuits, Father has sought "sovereign immunity" and "right-to-sue" waivers from the Family Court, AGO and DOJ (4/9/2021).

20. Father is also filing complaints with the Family Court, CJC and BBO calling for renewed investigations, as herein attached.

## PRELIMINARY STATEMENT

21. Lengthy (now ~70 hearings w/ 29 attorneys) parallel and dual lawsuit had been initiated in collusion and prosecuted under systemically false and fraudulent pretenses in Family Court.

22. As fully set forth below, Father has suffered significant harm, extensive injury and devastating damages as a result.

23. Father has 4 children: 2 children with each "Mother-B" and "Mother-C" from non-overlapping, long-term and fully committed relationships. "Mothers" have a history of deep, intractable jealousy and a ruthless, bitter competition for Father's past significant monetary resources and income-generating capacity.

24. Mothers' documented severe physical, verbal and maliciously manipulative lashings out at each other's children has been part of their long-term and deliberate leveraging for advantage.

- 5 -

25. Moreover, as a result of this bitter, uncontrolled and endless conflict, Mothers have repeatedly initiated court actions in Family Court and also in the Mass. District Court.

26. To overcome the initial burden of filing their complaints, Mothers have repeatedly resorted to factually and materially lying to police, DCF, school teachers, doctors, therapists, supervised visitation monitors, court-appointed Guardian ad Litems and to the many judges of the Family Court, under oath.

<u>FACTUAL ALLEGATIONS</u>

27. After abandoning her <u>non-biological</u> twins (8/2007), Mother-B filed for divorce from Father in Family Court (9/2007) and the amicable divorce was finalized (3/2008) without any litigation.

28. Family Court awarded custody of children, "Twins," (DOBs 3/13/2004) to Father, with Mother-B enjoying visitation rights.

29. Father later got engaged with Mother-C, they then signed a marriage license (5/2010), and they have 2 children, "Siblings," (DOBs 7/1/2009 and 6/4/2011). Father and Mother-C never married.

30. In 2011 Mother-B was a multi-millionaire and Mother-C had no significant assets. Mother-B called Father on 3/29/2011 to complain about how Mother-C had been an imminent threat to her

arrangement with him. Mother-B had not been paying any child support, nor expenses, nor child-related insurances to Father.

31. On 4/28/2011, just before the birth of Father's youngest child, Mother-B initiated a premeditated "coup" against Father.

32. On that day Mother-B called the police on Father, alleging that he had been beating Twins. The police, upon learning about the vicious conflict between the two Mothers and the conflicting accounts of the false "beatings," declined to arrest Father.

33. The police specifically noticed, and seemingly acted on, the fact that Father had had to actually slap his son once, on the back of the head, with open palms, and the head not moving, to prove to officers that Mother-B's claims were staged and false.

34. Mother-B's filed application for criminal complaint was also later denied without record during the magistrate hearing.

35. Leveraging the fabricated "police and DCF activity," Mother-B filed her modification complaint in Family Court on 5/2/2011, days before Mother-C's complaint for child supports (5/10/2011).

36. The just initiated "race" for primary child support had a materially significant base, as Mother-C had previously and fraudulently demanded a $10,000/month support in Family Court.

37. Mother-B's extorted "absolutely no child supports, expenses nor insurances" arrangement with Father could not stand in light of Mother-C's aggressive, ruthless and deeply manipulative acts.

38. Family Court immediately transferred or awarded physical custody of the 4 children to Mothers, despite their improperly shared DCF report later concluding that the children's physical abuse by Father had not been supported, and that it had been "unknown" if Mother-B would retain physical custody of Twins.

39. Based on the fraudulently initiated, and later improperly shared, or "leaked," police and DCF reports, Father was ordered to see all 4 of his children only during supervised visitations.

40. Mother-C was immediately awarded $342 support for Siblings.

41. Mother-B was awarded her $233 supports for Twins only 3 years later, on 6/30/2014, despite her relentless pleadings.

42. This sustained the threat of Mother-B's premeditated, deeply child-abusive fraud unraveling (the healthy and happy Twins were diagnosed with PTSD just after Mother-B's "coup"), as Father was allowed to retain his half of Twins' legal custody until 2/2014.

43. To fabricate even more intractable conflict, Family Court deliberately allowed a "high-conflict" expert, and 400 times GAL Harvard psychologist, Dr. Robin Deutsch, PhD., to be brought in.

44. Prestigious Burns & Levinson partners and leading attorneys warned Father, "The satisfaction you are seeking is likely not to come out of trial with a Judge who thinks so very highly of Dr. Deutsch, no matter how hard we try to point out flaws."

45. Predictably, the Harvard "superstar" GAL's report thoroughly invalidated Father's entire life, while deliberately ignoring all of his submitted extensive written documentation and record.

46. During her investigation, Dr. Deutsch a) never noted that Twins were in Father's sole care for the preceding 4 years yet reported that they were "very healthy, charming, intelligent", b) never visited Father's and Twin's home of 7 years yet reported about their environment, toys, etc., c) never observed Father with Twins yet reported about Twins's emotions toward their Dad, d) never contacted Twin's coaches and teachers yet reported about their exercise regimens, e) never considered school policies and "healthy" practices yet reported about Father's caring and feeding of the children, f) never contacted Mother-C yet used her emails as key evidence in the report, etc.

47. At an immediate loss of $1.5M, the "cash poor" Father was forced to dump his "big" house, only to be able to pay the Burns & Levinson attorneys $152,429 for properly deposing the GALs.

48. Without Dr. Deutsch's deposition, Father would not have been able to compile his 100+ pages affidavit about Dr. Deutsch's practices, documenting 900+ errors and deceptions in her "work."

49. Father's efforts to "blow the whistle" on Family Court's routine child-predatory practices were immediately buried, and Dr. Deutsch was allowed back in for a "revenge" investigation.

50. Dr. Deutsch's verdict of "indefinite supervised visitations" (as per Father's "possible personality disorders") was sustained by Family Court, despite Father's efforts to disprove the GALs.

51. Father voluntarily submitted to comprehensive psychological testing, evaluations, therapy, etc. (~400 total hours) by three Harvard actual medical doctors and professors, all superiors of Dr. Deutsch's. He then filed an "Offer of Proof" with the court.

52. The Harvard psychiatry professor and actual medical doctor wrote in his thoroughly researched recommendations that: **"(1) Father presents no danger to his children; (2) there is no indication of impairment of his fitness to parent"**, yet Family Court still refused to hear Father out, ignored his pleadings, affidavits, exhibits, and denied him his witnesses at trial.

53. To forcefully override the desperate Father, Family Court deliberately allowed Mothers to ruthlessly abuse the children.

54. The children were deliberately and repeatedly uprooted, falsely diagnosed, sent out-of-state to be "brainwashed" against their Father, and to be forcefully medicated into compliance.

55. The children were also systemically alienated from their Father and their entire paternal family in schools and through the incessantly cancelled supervised visitations, all with Family Court's knowledge and tacit agreement and cruel support.

56. The children were also forced into the hospital to undergo unnecessary and painful cancer surgery, with fraudulent medical insurance, only to provoke and strip Father of legal custody.

57. Moreover, as a result of Mothers' deliberately allowed actions, systemically and maliciously directed at Father, he was falsely alleged to have committed all the stereotypical, "toxic masculine," and otherwise impossible to defend from, wrongs and crimes including rape, battery, assault, abuse, daily child abuse, child torturing, "masculine" controlling, "possible" personality disorders, "structured" male-thinking, etc.

58. Mothers' long-term actions have severely affected and damaged the physical, emotional, and mental wellbeing of their own children with Family Court's informed and cruel knowledge.

59. As a result of this malicious and ruthlessly vicious stereotypical "all-out war," Father has been falsely arrested, falsely imprisoned, forcefully and fully separated from his children, professionally defamed, and entirely and utterly destroyed personally, with his existence and livelihood denied.

60. Despite 500+ "no problems whatsoever," court-ordered supervised visits with all his children, initiated based on documented false and fraudulent pretenses, Father has lost all connections with his dear and forcedly fatherless children.

61. Despite Father's advanced software engineering training and proven track record, as he has sold software written entirely by himself for $25M, Family Court fraudulently threatened, bullied, extorted and ordered him to work for just a minimum wage.

62. Family Court rejected Father's pleadings for relief in this regard and forcefully left intractable orders to stand without any reconsiderations, or possibility for an appellate review.

63. Family Court deliberately and provocatively made properly supporting all of Father's children, at least at the combined historical ~$5,000/month level, entirely impossible for him.

64. Despite Father truthfully testifying in Family Court more than 3 years ago about his fraudulently forced indigency, Family

Court committed him to an utterly destructive, professionally and from an income-generating perspective, jail sentence for not having $255, and for not being able to pay a $2,500, nor the quickly reduced $1,464 "purge" to the millionaire Mother-B.

65. With proven no assets, no savings, no income, no means of transportation, and a fully destroyed professional reputation, through malicious insinuations, Father's prospects at securing an even minimum, and thus truly child-depriving, deeply unjust, and grossly abusive wage, has now become physically impossible.

66. Family Court's exclusive reliance on Mothers' inconsistent, false, and defamatory accusations has thus directly and proximately caused substantial and permanent damage to Father.

67. The false and defamatory accusations were then deliberately metastasized to third-parties and all members of the children's caregivers, e.g. schools, doctors and therapists, thus further damaging Father's existence, which was reasonably foreseeable.

68. As a direct and proximate result of the false and defamatory accusations, Father suffered permanent harm to his reputation.

69. The false and defamatory accusations against Father are defamatory per se, but are also the result of systemic fraud-on-the-court schemes, as recently presented and argued in Father's

- 13 -

attached pleadings filed in the Superior Court on 3/19/2021, and as attached herein in "Memorandum Of Law Re: Deliberate Fraud."

70. As a direct and proximate result of these now documented systemic stereotypical discriminations and tacit but sadistic attacks by Family Court and its "trusted" officers, Father suffers and will continue to suffer severe emotional distress.

71. As a direct and proximate result of the Family Court's acts, Father is forced to live his life in a constant state of concern over his own safety, liberty and wellbeing, as well as the safety, liberty and wellbeing of his four innocent children.

72. Family Court acted with actual malice and common law malice, thereby entitling Father to an award of punitive damages.

73. Family Court's conduct through the last 10 years has been outrageous and willful, demonstrating a conscious indifference to consequences. Father is entitled to an award of punitive damages to punish the Family Court, and to deter it from repeating such egregiously unlawful misconduct in the future.

74. Father's monetary damages and losses are as follows:

| | |
|---|---:|
| Property taxes | $25,125.00 |
| "Shared" house | $380,603.00 |
| "Big" house | $1,556,865.00 |

| | | |
|---|---|---:|
| GALs' expenses | | $55,214.00 |
| "Therapy" expenses | | $157,288.00 |
| "Supervision" expenses | | $56,944.00 |
| Missed income (10 years) | $350K / year | $3,500,000.00 |
| Missed appreciation (33%) | ($1.5M + $234K) * 33% | $572,000.00 |
| Forced investments | Metrology instruments | $150,000.00 |
| Double taxation | | $65,000.00 |
| "Legal" expenses | $1,265,112 + $180,000 Pro Se | $1,445,112.00 |
| "Survival" expenses (since 6/2017) | 47 months x $2,836 | $133,292.00 |
| **Total damages/losses** | | **$8,097,443.00** |

## HARMS, INJURIES, AND MATERIAL DAMAGES

75. Family Court's relevant verbal and/or written orders and judgments, "Orders", are dated 2/12/2018, 5/16/2018, 8/6/2018, 8/24/2018, 9/26/2018, 12/17/2018, 1/11/2019, 2/20/2019, 4/11/2019, 4/24/2019, 6/13/2019, 8/7/2019, 8/8/2019, 8/22/2019, 10/21/2019, 12/2/2019, 12/6/2019, 1/6/2020 and 2/19/2020.

76. The Orders also explicitly include and are all based on the two "root cause" judgements, dated 2/13/2014 and 6/30/2014, with inconsistent, materially contradictory, and fully intractable, e.g. 1,200+ significant discrepancies, "findings of facts."

77. Moreover, said "findings of facts" are maliciously derived from deliberately fraudulent and stereotypically biased GAL

investigations, that had been explicitly reported as faulty with Father's 100+ pages affidavit, listing 900+ documented errors.

<u>FIRST COUNT (42 U.S.C. § 1983: FREE SPEECH AND DUE PROCESS)</u>

78. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

79. The Orders, on their face and as applied or threatened to be continually applied by Family Court, are:

    79.1. Unconstitutional abridgments of Father's affirmative rights to freedom of speech under the US Constitution, First and Fourteenth Amendments

    79.2. Unconstitutionally over-broad restrictions on expression

    79.3. Unconstitutionally vague restrictions on expression

    79.4. Content and viewpoint-based restrictions on speech

    79.5. Do not serve any significant governmental interest

    79.6. Do not leave open alternative channels of communication

    79.7. Are neither narrowly tailored nor the least restrictive means to accomplish any permissible governmental purpose sought to be served by the legislation.

80. The Orders fail to adequately advise, notify, or inform persons threatened with possible prosecution for violation of their requirements.

81. Therefore, the Orders, on their face and as applied or threatened to be continually applied by Family Court, are:

    81.1. Unconstitutionally vague, in violation of due process guarantees of the 14th Amendment to the US Constitution

    81.2. Are irrational and unreasonable, imposing unjustifiable restrictions on the exercise of protected constitutional rights. Because they are irrational and unreasonable, their application violates due process guarantees of the Fourteenth Amendment to the US Constitution.

82. The Orders, on their face and as applied or threatened to be continually applied, violate the Equal Protection Clause of the Fourteenth Amendment to the US Constitution and similar guarantees in the Massachusetts State Constitution by denying Father free speech rights allowed to others in similar situations, and other protections of state and federal law.

<u>SECOND COUNT (42 U.S.C. § 1983: EQUAL PROTECTION)</u>

83. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

84. The Orders, on their face and as applied or threatened to be continually applied by Family Court, violate the Equal Protection Clause of the Fourteenth Amendment.

85. Specifically but not exclusively, they create two classes for the purposes of the Family Court: "Receivers," who have unconditional and unlimited control of "facts" and "controlling levers" (i.e. children), and "Givers" who are allowed to only provide, while being either unconditionally controlled by said "levers," or systemically destroyed by attrition, or by means outside of rule-of-law, i.e. public and institutional shunning.

86. These classifications have a direct bearing on the fundamental interest in free speech and due process rights.

87. The Family Court has no compelling <u>legitimate</u> interest justifying the creation of these discriminating classes and cannot show that these deliberately fabricated discriminations are necessary to serve any <u>legitimate</u> governmental interest.

<u>THIRD COUNT (VIOLATION OF MASSACHUSETTS CONSTITUTION)</u>

88. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

- 18 -

89. The Orders, on their face and as applied or threatened to be continually applied by Family Court, violate articles 1, 10 and 12 of the Massachusetts Declaration of Rights.

### FOURTH COUNT (VIOLATION OF MASSACHUSETTS CIVIL CODE)

90. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

91. The Orders, on their face and as applied or threatened to be continually applied by Family Court, violate the Massachusetts Civil Code as repeatedly denying Father's constitutional rights are not exempt under M.G.L.c. 258 § 10, and are specifically not discretionary functions per M.G.L.c. 258 § 10(b).

### FIFTH COUNT (FULLY DESTROYED PARENTAL BOND)

92. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

93. Father further states that he has consistently acted in good faith, and has protected his dear innocent children as much as possible. Including protecting his children's Mothers by often and repeatedly offering mutually beneficial and caring ways to settle and normalize the "high-conflict" cases deliberately and maliciously fabricated by Family Court's elite, "trusted" and colluding professionals.

94. Father has a fundamental liberty interest in his connection with and care of his children, and his children have an interest in having a connection with and being cared for by their father.

95. "Equally fundamental is the substantive due process right of a child to be raised and nurtured by his parents." Wooley v. City of Baton Rouge, 211 F.3d 913,923 (5th Cir.2000) ("a child's right to family integrity is concomitant to that of a parent").

96. Father's four children still have lost all connections with, and nurturing support from their loving father, and from their entire deliberately and maliciously "ejected" paternal family.

97. The loss is due to deliberate defrauding, malicious defaming and profoundly child-abusive acts directly, or indirectly, through the many attorneys' shenanigans, committed by Mothers.

98. "The rights to conceive and to raise one's children are essential... basic civil rights of man... far more precious... than property rights." Dept. of Pub. Welfare v. J.K.B., 379 Mass. 1,3 (1979) (Stanley v. Illinois, 405 U.S. 645,651 (1972)).

99. "The State cannot infringe this fundamental liberty interest unless it affords parents and children due process." See J.K.B., 379 Mass. at 4. "The essence of due process is the right to be

heard 'at a meaningful time' and 'in a meaningful manner.'" Id. at 3-4 (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

SIXTH COUNT (FINANCIAL RUIN, LOST WAGES, AND DEFAMATION)

100. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

101. Father further states that since 6/11/2011, he has fully complied with his professional obligations as an able, capable, willing, and eager, trained, and skilled software engineer.

102. Father also states that he has productively and verifiably invested a full-time effort, according to his now 30+ years of experience, expertise and skills, as well as his advanced education and training, into preparing for and developing viable strategies, technical positioning, software implementations, and marketing for his software products, and also open source IP.

SEVENTH COUNT IV (DEMAND FOR DECLARATORY RELIEF M.G.L. c. 231A)

103. For a relevant framing context, Father incorporates by reference all preceding paragraphs as if fully restated herein.

104. This is a genuine and profoundly child-abusive, malicious, and ruthless controversy between Father and Family Court as to Father's entitlement for reconciliation, emotional, personal,

and paternal reparations, as well as payment of his realized significant material damages and deliberately forced losses.

105. Father is entitled to a determination of his rights, including his parental rights, duty, and status under the terms of his acknowledged fatherhood, rightful employability, right to exist, right to earn a living and, most importantly, his right to support his hapless and forcedly fatherless children.

<u>PRAYER FOR RELIEF</u>

106. Unless enjoined by this Court, the Defendants will continue to infringe Father's constitutionally protected rights and thereby cause irreparable injury, as damages alone cannot fully compensate plaintiff for the ensuing harm. This threat of injury from continuing violations requires injunctive relief.

**WHEREFORE**, Father respectfully requests that this Court:

107. Enter judgment against the Defendants;

108. Enter a declaratory judgment declaring the acts of the Family Court to be a violation of Father's constitutional rights to freedom of speech, equal protection, and his due process;

109. Issue a declaratory judgment declaring that the Family Court's orders and judgments are unconstitutional on their face;

110. Issue a declaratory judgment that the Family Court's orders and judgments are unconstitutional as enforced and as applied;

111. Issue a preliminary and permanent injunction enjoining the Defendants, their agents, employees, and officers from enforcing the Family Court's orders and judgments in Father's matters;

112. Enter a declaratory judgment adjudicating the rights, duties, and relevant status of the parties under general rights, including parental rights, right to earn a living, and right to support one's children, etc., pursuant to M.G.L.c § 231A;

113. Award damages to Father for his suffered significant personal and professional harm, injury, and devastating material damages, specifically including realized losses and lost wages;

114. Award compensatory damages to Father to fully compensate him for his injuries, pain, and suffering caused by Defendants' discriminatory conduct, pursuant to Title 42 U.S.C. § 1981, in an amount not less than 8.1 Million Dollars ($8,100,000.00);

115. Assess civil penalties and punitive damages against the Defendants to vindicate the public interest, pursuant to 42 U.S.C. § 3614(d), in an amount no less than triple damages;

116. Award Father costs, interests, expenses, and reasonable "legal fees" pursuant to 42 U.S.C. §1988, and other statutes;

- 23 -

117. Enter that all costs of this action be taxed to Defendants;

118. Grant all such other and further relief as the interests of justice may require, and that this Court deems just and proper, including equitable relief.

JURY DEMAND

119. Father demands a trial by jury on all claims so triable.

CERTIFICATION AND CLOSING

120. Under Fed.R.Civ. § 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

121. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand

that my failure to keep a current address on file with the

Clerk's Office may result in the dismissal of my case.

Signed under the pains and penalties of perjury.

April 23, 2021                              Respectfully submitted,

                                            /s/ Imre Kifor, Pro Se
                                                     718 Main St.
                                             Acton, MA 01720
                                             I have no phone
                                             ikifor@gmail.com